IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | | |
|---|---|---|
| PATRICK A. IVEY and STARLA IVEY, | * * * | CV619-110 |
| Plaintiffs, | * * | CIVIL ACTION NO._____ |
| v. | * * | |
| BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA; GEORGIA SOUTHERN UNIVERSITY; THE GEORGIA DEPARTMENT OF DEFENSE; AND THE GEORGIA ARMY NATIONAL GUARD, | * * * * * * * * | JURY TRIAL DEMANDED |
| Defendants. | * | |

## COMPLAINT

Patrick A. Ivey ("Coach Ivey") and Starla Ivey ("Mrs. Ivey") (collectively "Plaintiffs") file this Complaint against Defendants Board of Regents of the University System of Georgia ("BOR"), Georgia Southern University ("GSU"), the Georgia Department of Defense ("GDOD"), and the Georgia Army National Guard ("GANG") (referred to collectively as "Defendants"), and allege as follows:

### NATURE OF THE ACTION

1. Plaintiffs bring this action to recover for personal injuries sustained as a result of Defendants' negligence while operating a M119 howitzer (the "howitzer"). Coach Ivey's injuries occurred on September 29, 2018 at Defendant GSU's Allen E. Paulson Stadium during a football game, when a howitzer owned and operated by Defendant GANG was fired

in the immediate vicinity of Coach Ivey, and Starla Ivey's injuries occurred as a consequence of the same. Plaintiffs provided ante litem notices to each of the Defendants named above and the Georgia Department of Administrative Services as required under O.C.G.A. § 50-21-26. *See* Exhibit A.

## PARTIES TO THE CASE

2. Plaintiffs are Kentucky citizens residing in Oldham County, Kentucky. At the time of the events leading to this action, Coach Ivey was an Assistant Athletic Director at Arkansas State University ("ASU") and in Statesboro, Georgia for a football game between ASU and Defendant GSU.

3. Defendant BOR is a corporation created by the State of Georgia, pursuant to O.C.G.A. § 20-3-20. The offices of Defendant BOR are located at 270 Washington Street, SW, Atlanta, Georgia, 30334. The BOR is the state agency vested with the governance, control, and management of the University System of Georgia.

4. Defendant GSU is a public university located in Statesboro, Georgia, a member institution of the BOR, and governed by the BOR.

5. Defendant GDOD is an agency of the State of Georgia, pursuant to O.C.G.A. § 38-2-130, and is the governing body of Defendant GANG, pursuant to O.C.G.A. § 38-2-132. Defendants GDOD and GANG have offices located at 1000 Halsey Avenue, Marietta, GA 30060.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C.

§ 1332 because the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between Plaintiffs and Defendants. Plaintiffs further provided ante litem notice in the time and manner required by the Georgia Tort Claims Act such that this Court has subject-matter jurisdiction.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1)-(2) because Defendant GSU is located within this District and because a substantial part of the events or omissions giving rise to this case occurred in this District.

## FACTUAL ALLEGATIONS

8. On the evening of September 29, 2018, Coach Ivey was in Statesboro, Georgia attending a football game between ASU and GSU (the "game") at Allen E. Paulson Stadium.

9. Defendant GSU had designated the game against ASU as their Military Appreciation Game and asked Defendant GANG to attend and fire the howitzer to celebrate.

10. Prior to the game, an article on GSU's student-run news website (www.thegeorgeanne.com) stated that the howitzer would be fired by Defendant GANG when GSU took the field and after each GSU touchdown. *See* Brendan Ward, Cannon to be Used During Arkansas State Football Game for Military Appreciation Day, THE GEORGE-ANNE (Sept. 28, 2018), http://www.thegeorgeanne.com/sports/article_e76e1ffd-90f8-5c82-b6f5-98d52b740203.html. The plans to fire the howitzer, and when it would be fired, were also published on GSU's Instagram (@gsathletics), Facebook (Georgia Southern Athletic Foundation & Ticket Office), and Twitter (@GSAthletics_FB) pages. The plans to fire the howitzer during the game were made and implemented by employees of the Defendants

GSU and the BOR acting within the scope their employment. The plans to notify and warn the athletic participants, coaches, staff and fans of the danger created by the howitzer blast were made and implemented by employees and agents of the Defendants GSU and BOR acting within the scope of their employment. .

11. Due to the high decibel levels that result from the howitzer firing, ear protection was provided to fans sitting in sections adjacent to the howitzer and was made available to other fans upon request.

12. Despite Defendants' knowledge of the need for ear protection, no ear protection was offered to Coach Ivey or the ASU staff.

13. At the game on September 29, 2018, the howitzer was placed on the field near the Bishop Field House, which housed the visiting team's (*i.e.*, ASU's) locker room.

14. As the Assistant Athletic Director for the ASU football team, Coach Ivey was on the sidelines performing his normal in-game responsibilities to the ASU players and coaches.

15. At the end of the first half, Coach Ivey had moved toward the end zone near the Bishop Field House in order to usher his players into the locker room following the final play of the first half.

16. Immediately following the final play of the half, and without warning, Defendant GANG, acting through its agents and employees within the scope of their employment, fired the howitzer.

17. At the time Defendant GANG fired the howitzer, Coach Ivey was standing

approximately 15-20 feet in front of, and directly in line with, the howitzer.

19. Defendant GANG fired the howitzer as ASU and GSU exited the field following ASU's unsuccessful attempt at a "Hail Mary" pass as the clock expired on the first half. Firing the howitzer at that time was unexpected and was in direct contradiction to when Coach Ivey, the ASU team, and all fans were informed that it would be fired.

19. Consequently, Coach Ivey was unable to prepare for the howitzer's blast and sustained injuries to his ears as a result.

20. At a recent football game, the GSU President wore ear protection while firing the howitzer one year after the incident complained of here. The GSU President was seated behind the howitzer where noise exposure would be lower than Coach Ivey's position at the time of the injury. The Defendant GANG posted the following photograph on social media:



### The Howitzer and Noise-Related Injury

21. The howitzer is a cannon fielded by the United States Army and all Army National Guard combat infantry teams, and fires a variety of ammunition.

22. When fired, the howitzer emits an impulse noise (*i.e.*, gunshot) with a sound-pressure level of approximately 180 decibels (dB). In comparison, a small .22 caliber rifle emits an impulse noise with a sound-pressure level of approximately 140 dB, while a freight

train from 100 feet away emits a sound-pressure level of approximately 80dB.

23. In recent years, the Army National Guard has increased its focus on hearing health concerns, and even altered its hearing testing policy for soldiers from once every five years to annually.

24. Occupational safety standards issued by the United States Occupational Safety and Health Administration ("OSHA") set the permissible exposure level for impulse noises at 140 dB, while the Centers for Disease Control and Prevention ("CDC") provides that noises over 120 dB can cause immediate hearing damage.

**Coach Ivey's Injury**

25. Immediately after the howitzer was fired Coach Ivey experienced extreme tinnitus (*i.e.*, ringing) in both ears as well as a loss of hearing in his left ear.

26. During halftime, Coach Ivey sought immediate medical attention from the ASU team doctors.

27. Over the next twenty-four hours the hearing in Coach Ivey's left ear improved while the hearing in his right ear began to deteriorate.

28. As a result of the injury, Coach Ivey's primary doctor referred him to an audiologist who diagnosed Coach Ivey with acoustic explosive ear trauma.

29. After multiple treatments and appointments with the audiologist, Coach Ivey was informed that the loss of hearing in his right ear was likely permanent.

30. Coach Ivey continues to suffer from hearing loss in his right ear and tinnitus in both ears.

31. Coach Ivey's hearing loss, combined with the ongoing tinnitus, have limited and will continue to limit his ability to perform the necessary functions of his job as a coach.

32. Coach Ivey's injuries were the direct and proximate result of Defendant GANG's negligent firing of the howitzer and Defendants GSU and BOR's negligent failure to warn.

## CAUSES OF ACTION
## COUNT I
### Negligence as to all Defendants

33. Plaintiffs fully incorporate all previous paragraphs.

34. At all times relevant to this action, Defendants owed a duty to Coach Ivey and those attending the football game to operate the howitzer in a reasonably safe manner.

35. At all times relevant to this action, the persons operating the howitzer were agents and/or employees of Defendant GANG who were acting at the direction and with the authority of employees of the Defendants GSU and BOR.

36. Defendants breached that duty by:

   a. Defendant GANG// Defendant GSU / Defendant BOR – firing the howitzer at a time other than the situations specified in pre-game announcements to all attending the game (*e.g.*, fans, coaches, players, etc.);

   b. Defendant GANG / Defendant GSU / Defendant BOR – firing the howitzer when Coach Ivey was in close proximity to, and directly in front of, the howitzer;

  c. Defendant GANG / Defendant GSU / Defendant BOR – failing to warn that the howitzer would be fired at the end of the first half;

  d. Defendant GANG / Defendant GSU / Defendant BOR– failing to warn that the howitzer would be fired at times other than those stated by Defendant GSU prior to the game;

  e. Defendant GANG / Defendant GSU / Defendant BOR – failing to erect a barrier and/or designate areas as prohibited to prevent persons from standing within a zone of danger prior to firing the howitzer; and

  f. Any other negligent act on the part of any Defendants that may be revealed during discovery.

37. As a direct and proximate result of Defendants' negligence and carelessness, Coach Ivey has suffered serious and permanent injury. Specifically, Coach Ivey suffered acoustic explosive ear trauma that has caused ongoing tinnitus in his right and left ears, permanent hearing loss in his right ear, loss of earnings and earning capacity, and special damages.

### COUNT II
### Loss of Consortium

38. Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs as if fully set forth herein.

39. Patrick and Starla Ivey are and were husband and wife at the time of the events referred to in this Complaint.

40. Defendants' conduct, as set forth above, proximately caused injury to the

marital relationship of Mrs. Ivey, include the loss of society, affection, services, assistance and companionship.

41. Mrs. Ivey is entitled to actual damages against Defendants, for the loss of consortium and society, proximately caused by the fault of Defendants.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray for judgment against Defendants as follows:

a. Actual damages, including past and future medical expenses, out-of-pocket expenses, and other past and future economic losses proven at trial;

b. Non-economic damages permitted by law, including damages for physical pain and suffering and loss of enjoyment of life;

c. Costs of court; and

d. Any other such relief as this Court deems equitable and appropriate.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

Respectfully submitted,

/s/ Daniel B. Snipes
DANIEL B. SNIPES
Ga. Bar No. 665769
**BULLOCH LAW GROUP, LLC**
Post Office Box 327
Statesboro, Georgia 30459
(912) 764-9055
(912) 764-8687 facsimile
dsnipes@statesborolawgroup.com

T. Christopher Tuck
Robert S. Wood
T.A.C. Hargrove, II
**RICHARDSON, PATRICK, WESTBROOK & BRICKMAN, LLC**
1037 Chuck Dawley Blvd., Bldg. A
Mount Pleasant, SC 29464
(843) 727-6500
(843) 216-6509 facsimile

*Pending admission Pro Hac Vice*

*Attorneys for Plaintiff*